[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 7, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-13864

_____

D. C. Docket No. 06-20554-CV-MGC

HENRY VEGA,
individually and as representative
of all others similarly situated,

Plaintiff-Appellee,

versus

T-MOBILE USA, INC.,
a foreign corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 7, 2009)

Before TJOFLAT and MARCUS, Circuit Judges, and VINSON,[*] District Judge.

_____

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

TJOFLAT, Circuit Judge:

T-Mobile USA, Inc. ("T-Mobile") appeals the district court's certification of a class action brought against it on behalf of its former sales employees regarding the company's policy for paying commissions on the sale of prepaid cellular telephone accounts. The class seeks damages to recover those commissions. After a thorough review, we find numerous flaws, both procedural and substantive, in the district court's class certification analysis under Rule 23 of the Federal Rules of Procedure and find, further, that the proposed class, as pled, is not amenable to Rule 23 certification. We therefore hold that the district court abused its discretion in certifying the class, vacate the certification order, and remand with the instruction that the plaintiff's claims proceed individually.

I.

A.

T-Mobile is a provider of cellular telephone services. Although it offers various service plans, those plans generally fall under one of two classifications: (1) term contract plans, in which a customer pays a monthly access fee for a specified period of time (e.g., one or two years); and (2) prepaid or "pay as you go" plans, under which a customer purchases a set number of telephone minutes, and, when that "bucket" of minutes runs out, the customer chooses whether or not to

2

buy more minutes. Under the prepaid plans, the customer makes a non-refundable, up-front payment for the minutes purchased and may use those minutes at any time prior to the minutes' expiration, which is specified in the customer agreement.

Plaintiff Henry Vega was employed by T-Mobile from April 2004 through July 2005, when he was discharged for poor attendance. He worked as a retail sales representative at a T-Mobile retail store in Miami, Florida. Throughout his tenure, Vega's compensation was subject to the guidelines set forth in the company's 2004 Sales Incentive Compensation Program (the "compensation program"), which took effect on March 1, 2004.[1] Upon commencing his employment, Vega received a copy of the written compensation program, including an attachment outlining the compensation plan for his specific position, and returned a signed acknowledgment form indicating that he read and understood the compensation program, both generally and with respect to his specific position.

As reflected in the compensation program, the compensation structure for T-Mobile's sales employees varied by business channel and job position within a given channel. Generally, T-Mobile paid its retail sales representatives (i.e., its

---

[1] Presumably due to the proprietary nature of T-Mobile's compensation procedures, the parties, with the district court's permission and pursuant to a court-ratified Stipulated Protective Order Concerning Confidential Information, filed the compensation program document under seal in the district court. Out of respect for the competitively sensitive nature of the document, we have endeavored to avoid quoting from the compensation program or describing its terms in detail to any greater extent than the parties themselves have done in their briefs to this court.

employees, like Vega, who sold T-Mobile products and services through T-Mobile owned and operated retail stores) an hourly wage plus incentive-based commissions. Part of the monthly commission was derived from the employee's "net activations" for the month. The sales representative received credit (and payment) for a new activation whenever one of his customers commenced a new service plan. Should that customer later "deactivate" the service within 180 days of activation, however, T-Mobile would "charge back" the amount of the incentive compensation previously paid in order to reclaim that amount from the sales representative. As explained repeatedly in the compensation program, both generally and specifically with respect to retail sales representative compensation, "[c]ommissions are paid as an advance against commissions anticipated to be earned in the future. Commissions are not earned until the expiration of the 180-day commission charge back window." Accordingly, "if the customer deactivates their [sic] account with [sic] the 180-day period, T-Mobile will revoke the advanced commission it previously paid out."

Significantly, although it set forth general guidelines describing T-Mobile's compensation structure and procedures, the written document outlining the compensation program carried a number of disclaimers. For instance, the front cover of the document prominently included the following boxed statement:

4

Notice: This document contains guidelines relating to the compensation of certain T-Mobile Sales Professionals. This document and any oral, written or electronic communication related to the subject matter contained in this document are not intended and shall not be read to create any express or implied contract or promise of specific treatment or benefits in specific situations. Your employment relationship with T-Mobile is at-will and either you or T-Mobile can terminate your employment at any time without cause or advance notice. In T-Mobile's sole discretion, this document and the guidelines stated herein may be changed or discontinued at any time without prior notice.

Moreover, with respect to the incentive-based portion of its employees' compensation, "T-Mobile retains sole discretion to determine what transactions qualify for commission payout."

In January 2004, T-Mobile instituted a new "business rule" with respect to its accounting for prepaid service plans. Specifically, T-Mobile began to consider a prepaid account to be "deactivated" when the customer did not use his prepaid service for ninety consecutive days. The impetus for this change was to ensure an accurate tally of the number of active subscribers in the company's financial reports. Even though, under the new annual prepaid plan T-Mobile introduced that year, the customer could use his prepaid minutes for up to a year following the date of purchase, the company decided to consider customers with accounts that have been inactive for ninety days no longer to be active subscribers, and their accounts were deemed "deactivated." By July 2004, this new business rule had been

5

implemented throughout T-Mobile's operations, including its incentive commission structure. This meant that sales representatives who received advanced commissions for sales of prepaid accounts, which subsequently were "deactivated" due to ninety days of inactivity during the 180-day commission charge back period, would be charged back for those commissions. According to testimony from William Steele, T-Mobile's Manager of Sales Compensation Design, while the company did not formally amend the compensation program document to include this supplementation to the definition of "deactivation," T-Mobile informed its sales force of this new business rule and its potential impact on sales commissions, as it regularly did when it instituted similar procedural modifications, through the transmission of "sales commission pieces," including conference calls, the company's website, newsletters, bulletins, and formal and informal in-person training.

B.

Vega filed this putative class action in Florida state court on December 29, 2005. The gravamen of his complaint is that, by charging back commissions advanced on sales of "deactivated" prepaid service plans, T-Mobile violated the terms of the compensation program, failed to pay commissions earned by the sales representatives, and was unjustly enriched by retaining the benefit of its

6

employees' services without fully compensating them for such services. Vega's complaint, however, does not expressly connect T-Mobile's alleged payment obligations to any particular contract, including the written compensation program. Indeed, the complaint does not even mention the 2004 Sales Incentive Compensation Program. Instead, with respect to its prepaid-related claims, the complaint simply alleges: (1) that, because prepaid customers paid up-front for their service, T-Mobile "bore no risk of non-payment"; (2) that when T-Mobile charged its employees back for commissions on prepaid plans, "even though T-MOBILE received the full benefit of its agreement with the prepaid plan customers, T-MOBILE's commission based employees lost the benefits of those sales and the resulting commissions"; and (3) that "T-MOBILE has unfair [sic] and unjustly profited from its internal systems error by unduly charging back its employees on the prepaid plans and retaining its employee's [sic] wages for its own use and benefit."

The complaint contains two counts: Count I, "unpaid wages," and Count II, unjust enrichment. Both counts seek damages for sales commissions that Vega claims T-Mobile improperly withheld or charged back from its employees.[2] Furthermore, assuming or implying (though never expressly alleging in the

---

[2] The complaint does not expressly seek injunctive or declaratory relief.

7

complaint) that all T-Mobile sales employees were subject to the same compensation program, Vega brought his action on behalf of, and sought certification of, a putative nationwide class defined as follows:

> All employees of T-Mobile who received, or were entitled to receive, commissions for the sale of T-Mobile prepaid cellular telephone plans who did not receive their commissions or were charged back by T-Mobile for their commissions between the commencement of the statute of limitations through the date that the Court certifies this suit as a class action.

Despite the incomplete and ambiguous allegations in the complaint, Vega essentially argued in the district court (and in this court) that the written compensation program document exclusively and uniformly controlled the compensation of T-Mobile sales representatives, that the compensation program did not provide for commission charge backs on prepaid service plans, and that, by implementing its business rule, T-Mobile unfairly and unilaterally attempted to re-write the compensation agreement with respect to prepaid plans.

On March 6, 2006, T-Mobile removed the case on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act (CAFA).[3] On January 9, 2007, following the close of all discovery (including

---

[3] The CAFA provides original federal jurisdiction over any civil class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the putative class includes at least 100 members; and (3) any member of the putative class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B).

8

merits discovery) and more than a year after filing the complaint, Vega moved for class certification. On the same day, although the district court had established a May 15, 2006 deadline for amending the pleadings, Vega moved to amend his complaint to add a count for breach of contract, specifically referencing the compensation program. In his class certification motion, in addition to the nationwide class definition initially pled, Vega alternatively sought certification of a subclass consisting of T-Mobile employees who worked in Florida.[4] Vega also expressly excluded T-Mobile's current employees, among others, from the class definitions proposed in his motion. T-Mobile filed an opposition to Vega's motion for class certification, and, while that motion was pending, it also filed a motion for summary judgment.

On April 24, 2007, the district court denied Vega's motion for leave to amend his complaint – which the court described as having been "filed in the fourth quarter of the game, with the minutes ticking down to conclusion" – because it found that such untimely amendment "would prejudice the Defendant as discovery has ended, and would cause undue delay if discovery were re-opened."

---

[4] Vega included this new putative Florida subclass or alternative class in his proposed amended complaint. In his class certification motion, he stated that, should the district court deny leave to amend the complaint, he would revert to the class definition and claims pled in the initial complaint.

On May 8, 2007 – just six days before the case was scheduled to go to trial – the district court entered its order on class certification and summary judgment. The district court found two problems with the class definition proposed by Vega: (1) the putative nationwide class lacked commonality due to variations in the contract and employment laws of the fifty states; and (2) as the factual allegations in the complaint focused on charge backs of commissions already paid, but indicated nothing about any failure to pay commissions in the first instance, the inclusion in the class of T-Mobile "employees . . . who . . . were entitled to receive[] commissions . . . who did not receive their commissions" would implicate claims falling outside the scope of the complaint, as pled, and, thus, failed the typicality requirement. Nevertheless, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, the district court certified the following modified class:

> All T-Mobile employees in Florida who received commissions for the sale of T-Mobile prepaid cellular telephone plans, but were charged back by T-Mobile for those commissions between the commencement of the statute of limitations through the date that the Court certified this suit as a class action. Excluded from the class are . . . the officers, directors, agents, servants, or employees of Defendants [sic] . . . .

In the same order, the district court also denied T-Mobile's motion for summary judgment, finding that Vega adequately pled claims for "breach of an employment contract and unjust enrichment" and that the evidence revealed disputed issues of material fact.

10

We granted T-Mobile's petition, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure,[5] for interlocutory review of the district court's class certification order.[6]

II.

We review a district court's grant of class certification for abuse of discretion. Klay v. Humana, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004). "However, with great power comes great responsibility; the awesome power of a

---

[5] Rule 23(f) provides:

**Appeals.** A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 10 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed. R. Civ. P. 23(f). As this interlocutory appeal is before us pursuant to Rule 23(f), our jurisdiction is limited to review of the district court's class certification decision, and, therefore, we do not address the district court's denial of T-Mobile's motion for summary judgment. Franze v. Equitable Assurance, 296 F.3d 1250, 1252 (11th Cir. 2002). Our silence on this subject, however, should in no way be construed as approval of the district court's summary judgment ruling.

[6] The same day it issued its class certification order, the district court granted motions by both parties to continue the scheduled May 14, 2007 trial date and, two days later, re-set the trial for the two-week period commencing May 29, 2007. The court denied plaintiff's motion to continue the trial pending additional merits discovery. On May 22, 2007 – the day before the re-scheduled pre-trial calendar call – the district court granted T-Mobile's motion to stay proceedings and administratively closed the case pending this appeal, with the trial to be re-set "with all expediency" following disposition of this appeal. In the interim, per the order of the district court, the parties have filed joint notices in the district court every thirty days to apprise the court of the status of this appeal. The stay order specifically provided that the stay did not affect plaintiff's obligations regarding notice to the members of the certified class.

11

district court must be 'exercised within the framework of rule 23.'" Id. (quoting

Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996)). In this regard,

> A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner. Finally, an abuse of discretion occurs if the district court imposes some harm, disadvantage, or restriction upon someone that is unnecessarily broad or does not result in any offsetting gain to anyone else or society at large. In making these assessments, we review the district court's factual determinations for clear error, and its purely legal determinations de novo.

Id. (citation omitted). "The burden of proof to establish the propriety of class

certification rests with the advocate of the class." Valley Drug Co. v. Geneva

Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

### III.

"For a district court to certify a class action, the named plaintiffs must have

standing, and the putative class must meet each of the requirements specified in

Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements

set forth in Rule 23(b)."[7] Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir.

---

[7] In its entirety, Federal Rule of Civil Procedure 23(a) and (b) states:

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;
    (3) the claims or defenses of the representative parties are typical

12

2004).  Under Rule 23(a), every putative class first must satisfy the prerequisites of

"numerosity, commonality, typicality, and adequacy of representation."  See Fed.

R. Civ. P. 23(a); <u>Valley Drug Co. v. Geneva Pharms., Inc.</u>, 350 F.3d 1181, 1187-88

---

> of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) **Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if:
> > (1) prosecuting separate actions by or against individual class members would create a risk of:
> > > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> > > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> > (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> > (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
> > > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> > > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> > > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> > > (D) the likely difficulties in managing a class action.

(11th Cir. 2003). In this case, the district court certified the class pursuant to Rule 23(b)(3), which additionally requires findings: (1) that common questions of law or fact predominate over questions affecting only individual class members ("predominance"); and (2) that a class action is superior to other available methods for adjudicating the controversy ("superiority").[8] See Fed. R. Civ. P. 23(b)(3); Klay, 382 F.3d at 1251.

"A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996); see also Martinez-Mendoza v. Champion Int'l Corp., 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (noting a trial court's "independent obligation [under Rule

---

[8] Vega's complaint, in the section entitled "Class Action Allegations," contains language that appears to invoke Rule 23(b)(1) as an alternative basis for class certification:

> The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests.

Vega, however, did not move for class certification under Rule 23(b)(1). Additionally, in his class certification motion, Vega argued that certification of an injunctive relief class would be appropriate under Rule 23(b)(2), but the complaint neither alleges the elements of a Rule 23(b)(2) class nor expressly seeks injunctive relief. Moreover, monetary relief – which Vega's complaint clearly and predominantly seeks – is only available in a Rule 23(b)(2) class action if it is incidental to the requested injunctive or declaratory relief. Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001). In view of the foregoing, and because the district court only certified a class under Rule 23(b)(3), we address only that subsection of the class action rule.

14

23(c)(1)] to decide whether an action was properly brought as a class action").

"Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug, 350 F.3d at 1188 n.15 (citing Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)); see Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 & n.12, 98 S. Ct. 2454, 2458 & n.12, 57 L. Ed. 2d 351 (1978) ("[t]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' . . . 'The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'") (emphasis and citations omitted); Huff v. N.D. Cass Co. of Ala., 485 F.2d 710, 714 (5th Cir. 1973) (en banc) ("It is inescapable that in some cases there will be overlap between the demands of [Rule] 23(a) and (b) and the question of whether plaintiff can succeed on the merits.");[9] Castano, 84 F.3d at 744 ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses,

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

15

relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.").

We review the procedures the district court undertook in conducting the Rule 23 analysis, whether the conclusions it reached were within its discretion given the mandates of Rule 23, and whether Vega's complaint, as pled, can sustain class action certification under Rule 23. Finding deficiencies on all three scores, we vacate the class certification and remand with the instruction that Vega's claims proceed individually.

A.

Initially, we examine whether the factual record provided the district court with an adequate basis to find that the class, as certified, meets Rule 23(a)'s numerosity requirement, i.e., whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The district court, after first noting that, "as a general rule, one may say that less than twenty-one is inadequate [for a finding of numerosity], more than forty is adequate, and numbers falling in between are open to judgment based on other factors," concluded "that well over forty individuals fall within the class definition adopted by this Court." See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (citing 3B Moore's Fed. Prac. ¶ 23.05[1] at n. 7 (1978)); see also Kilgo v. Bowman Transp., Inc., 789

16

F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"). But see Crawford v. Western Elec. Co., 614 F.2d 1300, 1305 (5th Cir. 1980) ("We certainly cannot say that a class of 34 satisfies the numerosity requirements as a matter of law.").

Vega, in his class certification motion, cited only the deposition testimony of William Steele, T-Mobile's Manager of Sales Compensation Design, in support of his argument for numerosity. In his testimony, Steele agreed that the number of retail sales associates employed by T-Mobile between the years 2002 and 2006 was "in the thousands."[10] While this company-wide testimony easily would constitute a sufficient basis for a finding of numerosity as it relates to a nationwide class, the district court, significantly, certified a Florida-only class. We have noted that, "[a]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983). Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement. Vega has not cited, and we cannot locate in the record, any evidence whatsoever (or even an allegation) of the

---

[10] Steele also testified that T-Mobile has "over 5000 associates, a thousand stores." The time frame during which that company-wide testimony was accurate, however, is unclear.

17

number of retail sales associates T-Mobile employed during the class period <u>in</u>

<u>Florida</u> who would comprise the membership of the class, as certified by the

district court.[11]

Yes, T-Mobile is a large company, with many retail outlets, and, as such, it

might be tempting to assume that the number of retail sales associates the company

employed in Florida during the relevant period can overcome the generally low

hurdle presented by Rule 23(a)(1). However, a plaintiff still bears the burden of

establishing every element of Rule 23, <u>see</u> <u>Valley Drug</u>, 350 F.3d at 1187, and a

district court's factual findings must find support in the evidence before it. In this

case, the district court's inference of numerosity for a Florida-only class without

the aid of a shred of Florida-only evidence was an exercise in sheer speculation.

Accordingly, the district court abused its discretion by finding the numerosity

requirement to be satisfied with respect to a Florida-only class when the record is

utterly devoid of any showing that the certified class of T-Mobile sales

---

[11] Additionally, Vega concedes on appeal that, for commonality and typicality purposes, the class should have been limited only to T-Mobile sales employees who, like he, were subject to the 2004 Sales Incentive Compensation Program, as opposed to any other compensation plan. While such a modification would likely constitute an improvement in the class definition, the district court did not impose this limitation on the class actually certified, and, for reasons explained in part III.B.2, <u>infra</u>, such a modification on remand would not salvage the certifiability of this class. However, if the district court had limited the class in this way, we note that there is also no showing by Vega or finding by the district court that a class comprised of T-Mobile's Florida sales representatives subject to the 2004 compensation program would satisfy the numerosity requirement.

representatives "in Florida" is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).[12]

B.

We next turn to the question of commonality under Rule 23(a)(2). After observing that the district court improperly conflated the commonality determination with a review for predominance pursuant to Rule 23(b)(3), and in the process failed to make a sufficient finding of either, we explain why Vega's claims, as pled, cannot satisfy the commonality or predominance requirements.

1.

The district court described the commonality inquiry as assessing "whether issues that are subject to generalized inquiry, and thus applicable to the class as a whole, predominate over issues that are amenable only to individualized inquiry." Initially, this is a clear misreading of Rule 23.

---

[12] We note that the plaintiff's failure to make a showing of numerosity with respect to the Florida-only class, which gives rise to the possibility that there are fewer than 100 members of the newly-narrowed Florida-only class, does not divest the federal courts of subject matter jurisdiction under the CAFA. See 28 U.S.C. § 1332(d)(5)(B). Even if it were later found that the narrowed, Florida-only class numbers fewer than 100, the § 1332(d)(5)(B) limitation applies only to "proposed" plaintiff classes (as opposed to classes actually certified or that go to trial); jurisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction. See Cooper v. R.J. Reynolds Tobacco Co., 586 F. Supp. 2d 1312, 1318-22 (M.D. Fla. 2008) (construing mass action provision of the CAFA), rev. denied, No. 08-90021 (11th Cir. Oct. 28, 2008); S. Rep. No. 109-14, at 70-71 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 66 ("Current law (that [the CAFA] does not alter) is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be 'ousted' by later events."); see also Bullard v. Burlington N. Santa Fe Ry. Co., 535 F.3d 759, 762 (7th Cir. 2008).

The commonality requirement demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This part of the rule "does not require that all the questions of law and fact raised by the dispute be common," Cox, 784 F.2d at 1557, or that the common questions of law or fact "predominate" over individual issues. Here, however, the district court took this relatively light burden and appears to have merged it with the Rule 23(b)(3) predominance requirement, albeit without saying so directly.

The district court's certification order was rather opaque about the way in which the court conducted its Rule 23 analysis. We assume for three reasons that the court attempted to collapse its predominance analysis into the commonality assessment – all under a section heading entitled "*Commonality*." First, as mentioned, the court described its commonality assessment as a determination of whether "issues that are subject to generalized inquiry . . . predominate over issues that are amenable only to individualized inquiry" (emphasis added). Second, the section of the district court's order entitled "*Rule 23(b) and the Class Definition*" – where we would expect to see a discussion of Rule 23(b)(3) predominance – refers only to superiority and contains no mention of predominance at all. Therefore, if the court did not attempt to include its predominance assessment in its discussion of commonality, then it entirely neglected to consider the critical

20

element of predominance – a situation that would constitute an obvious abuse of discretion and clear reversible error.[13]  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997) ("Rule 23(b)(3), however, imposes two additional requirements, and increased efficiency is only one of them.  Predominance is the other . . . .").  Third, the district court's language purporting to find commonality among a Florida-only class has the distinct ring of a predominance determination:

> This entire dispute centers essentially on the meaning and justifiable applicability of one compensation scheme – *the T-Mobile Sales Incentive Compensation Program* – purportedly applied uniformly by T-Mobile to its employees.  As such, the fact-finder's adjudication of the disputes concerning this compensation program will resolve the liability issues for all members of the class.

Accordingly, the district court's apparent intermingling of the commonality and predominance inquiries demonstrates, at best, imprecision in the organization of the class certification order or, at worst, a fundamental misapplication of Rule 23.  Either way, the district court's Rule 23 methodology causes us great concern.

---

[13]  We do, nonetheless, have some reason to believe that the district court may have completely omitted an analysis of predominance qua predominance.  The court set forth the general Rule 23 standard as follows:

> To sustain this burden [of establishing the propriety of class certification], the Plaintiff must satisfy all four Rule 23(a) requirements – numerosity, commonality, typicality, and adequacy of representation – and at least one Rule 23(b) requirement, such as showing that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Predominance, of course, must accompany the reference to superiority under Rule 23(b)(3). Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997).  The court, however, nowhere mentioned predominance as part of the checklist of Rule 23 elements.

On the one hand, it arguably could be said that the district court implicitly found both commonality and predominance. After all, the court effectively appears to have made a predominance determination, notwithstanding its appearance in the section of the order on "***Commonality***" and the absence of an invocation of Rule 23(b)(3) in that section, and such a finding – that "questions of law or fact common to the class members predominate over any question affecting only individual members," Fed. R. Civ. P. 23(b)(3) – necessarily requires an antecedent finding that there is at least one common question of law or fact in the first place.

Nevertheless, the "rigorous analysis" required of a district court under Rule 23 does not allow us to be so generous or forgiving. Castano, 84 F.3d at 740. Here, the district court misstated the commonality requirement as the predominance analysis and, in the process, elided (at best) a direct finding of commonality. Indeed, although it ambiguously alluded to "disputes concerning this compensation program" and the program's "meaning and justifiable applicability," the court never actually identified a single specific common question of law or fact. Furthermore, while the court arguably made an effective predominance determination, it managed to do so – as if by accident – without a single reference to Rule 23(b)(3) and with an all-too-cursory discussion of the

relevant facts. Rule 23 demands significantly greater analytical rigor and precision; backing into the requisite findings, and relying on a reviewing court to connect the dots, is not enough. We therefore find that the district court abused its discretion by following improper procedures in making its determinations, to the extent it made them at all, with respect to commonality and predominance.

2.

In addition, even if we were to deem adequate the district court's commonality and predominance methodologies, the court's substantive application of these Rule 23 requirements in this case was unreasonable enough to constitute an abuse of discretion.

Vega, on behalf of the putative class, asserted two claims in his complaint: "unpaid wages" and unjust enrichment. For the complaint to support class certification as to commonality and predominance, there must be common questions of law or fact among the class relating to one or both of these substantive claims, and, in addition, those common questions must predominate such that they "ha[ve] a direct impact on every class member's effort to establish liability" that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. Klay, 382 F.3d at 1255 (citation omitted; alteration in original). "Under the Rule 23(a)(2) commonality requirement, a class action

23

must involve issues that are susceptible to class-wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Even if the court can identify common questions of law or fact, however, "[t]he predominance inquiry . . . is 'far more demanding' than Rule 23(a)'s commonality requirement." Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000) (quoting Jackson, 130 F.3d at 1005, which quotes, in turn, Amchem Prods., Inc. v. Windsor, 521 U.S. 591,623-24, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997)).

"Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." Klay, 382 F.3d at 1255 (quoting Rutstein, 211 F.3d at 1234). In practical terms, we have described the test for predominance as follows:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3) . . . . [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

24

Klay, 382 F.3d at 1255 (quotations omitted).

At the threshold, the parties dispute whether Florida law even recognizes an independent cause of action for "unpaid wages." T-Mobile argues that Vega asserted the unpaid wages claim exclusively under Fla. Stat. § 448.08, a section of Florida's labor statutes that provides for the payment of attorneys' fees and costs to prevailing parties in actions for unpaid wages but that does not, itself, create an independent cause of action.[14] See Edwards v. Niles Sales & Serv., Inc., 439 F. Supp. 2d 1202, 1208 n.6 (S.D. Fla. 2006) (noting that an action for unpaid or back wages, for which § 448.08 may permit recovery of fees and costs, must be "brought pursuant to some other law"). Vega responds that his unpaid wages claim "is based on a breach of the compensation agreement and on common law"; in short, that it is basically a breach of contract claim.

The common law concerning breach of contract could certainly constitute one form of the "some other law" that could undergird an action for unpaid wages; however, we see no indication in Florida law that an unpaid wages claim, in and of itself, is necessarily the equivalent of a breach of contract claim. Rather, actions for unpaid wages are typically pled as breach of contract claims wherein the

_____

[14] Section 448.08 provides, in its entirety, "The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." Fla. Stat. § 448.08. The statute resides in part I ("Terms and Conditions of Employment") of chapter 448 ("General Labor Regulations") of title XXXI ("Labor") of the Florida Statutes.

25

agreement in question happens to be an employment or compensation contract. Indeed, Vega implicitly acknowledged that unpaid wages and breach of contract claims are distinct, and at least that the latter does not fully encompass the former, when he attempted to amend his complaint to add a count for breach of contract and to plead facts – for the first time – concerning the 2004 compensation program, which attempted amendments the district court rejected.[15]  Therefore, although Vega's nominal "unpaid wages" claim includes language about "breach[ing] the agreement" and "the breach," he, in his operative complaint, neither pled a claim for breach of contract nor identified a contract or agreement that T-Mobile purportedly breached.  As such, Vega's own pleading precludes him from relying on a breach of contract theory to support his "unpaid wages" claim.

Nevertheless, Vega essentially argues that we should treat his unpaid wages claim as a breach of contract claim.  The district court, notwithstanding its express denial of leave to amend the complaint to add a breach of contract claim, apparently accepted this argument, as the court identified Vega's state-law-based claims as "breach of contract and unjust enrichment" and proceeded to conduct its

---

[15]  It is noteworthy that, in denying leave to amend the complaint, the district court in no way suggested that Vega's initial complaint, and particularly its "unpaid wages" count, was somehow sufficient to state an effective claim for breach of contract, such that the proposed amendment would have been unnecessary or redundant.  Rather, the only reasons the court gave for denying leave to amend were the untimeliness of the attempt to amend, the prejudice the amendment would cause T-Mobile, and the undue delay that would result from reopening discovery.

26

Rule 23 analysis as if Vega had pled the very breach of contract claim that the court had disallowed just two weeks earlier. We have no ready explanation for this display of cognitive dissonance by the district court, and we strongly disapprove of this exercise in judicial rewriting of the plaintiff's pleading. In any event, although the legal adequacy of the "unpaid wages" claim and allegations pled in Vega's complaint is certainly suspect, even if we were to consider the "unpaid wages" count as one for breach of contract – the only common law basis Vega advances for the claim – the allegations in his complaint cannot satisfy the commonality and predominance elements required for class certification.

For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. See, e.g., Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th DCA 2008). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004) (citing W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So. 2d 297, 302 (Fla. 1st DCA 1999)). It is to these elements that we must address the commonality and predominance inquiries, and Vega's complaint fails on both points.

27

Most importantly, Vega has not shown commonality under a breach of contract theory because he has not alleged in his complaint the existence of a common contract under which T-Mobile employed all class members. As such, he could not utilize identical evidence on behalf of every member of the class to prove offer, acceptance, consideration, or the essential terms. Instead, these mandatory elements of each class member's claim depend on such individualized facts and circumstances as when a given employee was hired, what the employee was told (and agreed to) with respect to compensation rules and procedures at the time of hiring, the employee's subjective understanding of how he would be compensated and the circumstances under which his compensation might be subject to charge backs, and when and how any pertinent part of the employee's compensation agreement or understanding thereof may have changed during the course of that employee's tenure at T-Mobile. Without the existence of a common contract, of course, there can also be no commonality with respect to whether T-Mobile's conduct relating to commission charge backs, even if undertaken pursuant to a uniform policy, constituted a breach of every class member's particular employment contract, whether any such breach was material for every class member, or whether each class member suffered cognizable damages as a result.

Lacking commonality, the allegations in Vega's complaint obviously must fail the predominance test as well.

Vega argues, and the district court seems to have agreed, that the common contract at issue is the 2004 compensation program. This agreement, however, as we have already noted, is not mentioned – expressly or by description or other implication – in Vega's complaint. Instead, Vega sought certification of a broad class of all T-Mobile employees "who received, or were entitled to receive, commissions for the sale of T-Mobile prepaid cellular telephone plans who did not receive their commissions or were charged back by T-Mobile for their commissions" regardless of the specific compensation contract or contracts under which any given employee worked. While the district court limited the certified class to Florida employees who received advanced commissions on prepaid plans in the first instance, it defined the class in terms similarly disconnected from any specific compensation program, including all employees "who received commissions for the sale of T-Mobile prepaid cellular telephone plans, but were charged back by T-Mobile for those commissions" (but specifically excluding current employees). Therefore, the 2004 compensation program is unavailable as the source of common issues given the pleading and posture of the case.

29

Regardless, there is no dispute that the class certified by the district court includes members who either were never subject to the 2004 compensation program or were also subject to other policies during portions of their tenures, so issues involving that plan alone are not common to the entire class. In short, the district court was demonstrably incorrect when it concluded that "the fact-finder's adjudication of the disputes concerning this [2004] compensation program will resolve the liability issues for all members of the class."

On appeal, Vega has conceded that the class should be modified, on remand, such that it "not include members who were paid under compensation plans other than the 2004 Sales Incentive Compensation Program." The suggestion appears to be that the class's commonality and predominance problems would vanish if the claims were limited to those relating to the 2004 compensation program. We disagree that such a modification would make a difference.

First, Vega's suggestion that the 2004 compensation program could serve as the relevant common contract for a class limited to employees who labored under that policy is stymied by applicable state law. "It is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a

30

separate employment contract." Quaker Oats Co. v. Jewell, 818 So. 2d 574, 576-77 (Fla. 5th DCA 2002) (finding policy statements in employment manual relating to overtime pay did not constitute the terms of a contract of employment; citing Muller v. Stromberg Carlson Corp., 427 So. 2d 266 (Fla. 2d DCA 1983)); see also OneSource Facility Servs., Inc. v. Mosbach, 508 F. Supp. 2d 1115, 1120-24 (M.D. Fla. 2007) (holding that employer's compensation plan did not create enforceable contract right in employee to bonus compensation, noting that employer retained authority and discretion to amend, terminate, or modify the plan at any time); Sleit v. Ricoh Corp., No. 8:07-cv-724-T-23TBM, 2007 WL 2565967, at *1 (M.D. Fla. Aug. 31, 2007) ("Employee manuals such as handbooks and memoranda – even those that include compensation policies – are unilateral policy statements and do not contractually bind employers.").

T-Mobile could not have been clearer that it did not intend its 2004 compensation program to create enforceable contract rights or to constitute a separate, mutually-agreed-upon employment contract. The front cover of the compensation program document expressly stated, "This document and any oral, written or electronic communication related to the subject matter contained in this document are not intended and shall not be read to create any express or implied contract or promise of specific treatment or benefits in specific situations"

31

(emphasis added). Furthermore, it continued, "In T-Mobile's sole discretion, this document and the guidelines stated herein may be changed or discontinued at any time without prior notice." Additionally, the document cautioned, "T-Mobile retains sole discretion to determine what transactions qualify for commission payout." In the written acknowledgment form that he signed and submitted upon receiving the compensation program document, Vega expressly confirmed that he read and understood these caveats. Therefore, under Florida law, the compensation program cannot serve as a common contract even for a class narrowed to include only employees subject to it.

Furthermore, even assuming arguendo that the compensation program could be construed as a binding contract, which arguably could create common issues of fact and law, the narrowed class would still lack predominance. T-Mobile presented evidence in the form of affidavits from several sales employees who attested to their understanding of the incentive compensation and charge back procedures. These employees stated that, based on their training and other information provided to them by the company, they were aware that advanced commissions on prepaid sales were subject to charge back if the plans were deactivated (including by virtue of ninety days of account inactivity per T-Mobile's business rule) within the 180-day post-activation charge back window.

Even positing a common contract, this testimony illustrates the existence of significant individualized issues with respect to breach, materiality, and damages. Sorting out and proving the claims, if any, of these class members, and others with similar understandings (or, at least, understandings as substantially different from the one Vega purports to have had), would require substantial individualized evidence different from and in addition to that which Vega would proffer to establish his own claim. See Klay, 382 F.3d at 1255.

Additionally, T-Mobile apparently would proffer individualized and varying evidence to defend against claims of individual class members by showing what they knew or should have known about the charge back procedures. See id. at 1254 ("In determining whether class or individual issues predominate in a putative class action suit, we must take into account 'the claims, defenses, relevant facts, and applicable substantive law,' to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." (emphasis added; citation omitted)). Accordingly, even after the resolution of any common issues generated by the compensation program, significant questions concerning ultimate liability would remain for many class members. As such, the common questions would not predominate.

Vega's unjust enrichment claim also lacks commonality and predominance. In Florida, "[t]he essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006); see Florida Power Corp. v. City of Winter Park, 887 So. 2d 1237, 1241 n.4 (Fla. 2004). Critical for present purposes, before it can grant relief on this equitable claim, a court must examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist. Due to the necessity of this inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment. See, e.g., Klay, 382 F.3d at 1267; Rollins, 951 So. 2d at 876-77; Ortiz v. Ford Motor Co., 909 So. 2d 479, 481 (Fla. 3d DCA 2005) (noting that "the equities surrounding each class member's [interaction with the defendant] is [sic] not the same"). In short, common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts.

In the end, Vega's unjust enrichment claim suffers from many of the same commonality and predominance problems that beset Vega's "unpaid wages" claim. Cf. Klay, 382 F.3d at 1267. There is no evidence that the circumstances under which T-Mobile accepted a benefit from each of the putative class members – especially each employee's awareness of T-Mobile's applicable compensation policies – were common; indeed, T-Mobile has presented affidavit evidence suggesting that the circumstances were not common. Although Vega alleges he did not know that his commissions for prepaid plans were subject to charge back, the record indicates that many of his sales colleagues were well-versed in T-Mobile's procedures. Accordingly, whether or not a given commission charge back was "unjust" will depend on what each employee was told and understood about the commission structure and when and how commissions were "earned." Those employees who concede awareness that commissions advanced on the sale of prepaid cellular plans that are later deemed deactivations (including due to account inactivity) during the charge back window are not "earned," but are instead subject to charge back, cannot claim injustice when the company follows its compensation policies as expected and understood. The uncommon and individualized nature of this critical inquiry, and its foundational importance to the

35

liability determination for each class member, renders class certification inappropriate.

## C.

We next review the district court's analysis of the Rule 23 requirement that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1322 (11th Cir. 2008) (quotations and internal citations omitted; alteration in original). Although typicality and commonality may be related, we have distinguished the two concepts by noting that, "[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (citing Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).

1.

First, we find that the district court abused its discretion procedurally by failing to conduct any typicality analysis of the class it ultimately certified. After getting off to a promising start with respect to typicality by correctly describing the requirement, noting typicality problems with the class proposed by Vega, and shaving the acknowledged atypical components from the class definition, the district court abruptly stopped short and neglected to provide any findings or reasoning for why Vega's claims are typical of those of the remaining class members.

In its discussion of typicality, the district court first observed that "the Plaintiff's proposed statewide class definition serves up a mixed bag when scrutinized in light of the typicality prong."[16] The court went on to find that Vega's class definition "overreache[d] a bit" in that it included T-Mobile employees whose commissions were withheld (i.e., never paid) in the first instance, when Vega's complaint only contained allegations regarding commissions that T-Mobile advanced and subsequently charged back. The complaint said nothing about commissions that had never been paid at all.

---

[16] By the time it reached its typicality discussion, the district court had already rejected Vega's proposed nationwide class in favor of a Florida-only class on account of the commonality problems posed by a nationwide class's implication of the varied contract and employment laws of the 50 states.

37

Accordingly, finding that Vega could not "claim to have suffered the same harm as individuals on behalf of whom he had averred nothing,"[17] the court excluded from the class definition employees who never received their commissions and limited the remaining class to those employees, like Vega, alleging that T-Mobile advanced and then charged back their commissions. We have no quarrel with the district court's typicality decision on this point.

But that was the end of the typicality analysis. The court did not even attempt to describe whether and how Vega's claims are typical of the remaining class that it actually certified of T-Mobile employees "who received commissions for the sale of T-Mobile prepaid cellular telephone plans, but were charged back by T-Mobile for those commissions." This utter failure to interrogate Vega's claimed typicality with respect to the certified class was an abuse of discretion that cannot stand.

2.

In any event, had it conducted a proper typicality analysis on the remaining class, the district court would have discovered that Vega's claims are not typical of the class he seeks to represent. As noted, Vega's complaint contains no allegation

---

[17] The district court based this conclusion both on a lack of Rule 23(a)(3) typicality and a finding that Vega could not adequately represent such absent class members pursuant to Rule 23(a)(4).

38

of a common contract among all class members. Because of this, Vega's claims are not typical of the class's for many of the same reasons as the class fails for lack of commonality and predominance. See supra part III.B.2.

Vega concedes on appeal that his claims are not typical of those employees who worked under compensation plans other than the 2004 compensation program. Nevertheless, as with commonality and predominance, simply narrowing the class definition to claims arising in connection with the 2004 compensation program would not solve the typicality problem. First of all, such a modification would be inconsistent with and unsupported by Vega's complaint. The allegations in the complaint are not limited to the 2004 compensation program – indeed, they do not even mention it. The district court rejected Vega's proposed amended complaint, which sought to add references to the 2004 compensation program. Therefore, the operative pleading in this case provides no basis for a class limited to claimants under the 2004 compensation program.

Moreover, the claims Vega has asserted on behalf of the class depend on the terms, conditions, and mutual understandings regarding compensation that each class member had with T-Mobile. Without a common contract, it is impossible for Vega to bring a case typical of all other class members. Rather, the court would have to look to such individualized factors as each employee's individual contract,

when he was hired, what he was told (and agreed to) at the time of hiring, his subjective understanding of how he would be compensated and when charge backs might occur, and when and how any material aspect of his agreement or understanding of the agreement may have changed during his employment with T-Mobile.  See Moore v. Am. Fed'n of Television & Radio Artists, 216 F.3d 1236, 1241-42 (11th Cir. 2000) (doubting existence of typicality where "the district court would have to examine each [class member's] contract").

Even treating the 2004 compensation program as a common contract does not render Vega's claims typical.  For one thing, the class includes all classes of T-Mobile employees who received sales commissions, regardless of job title or position.  The compensation program, however, contains different attachments, ostensibly with different terms, for various specific positions within the company.  Vega received, and worked under, the compensation program for the retail sales channel and that was applicable to retail sales representatives like him.  His claims, therefore, could not be typical of class members from other business units or channels or even class members from the retail sales channel with different job titles, all of whom were subject to divergent compensation rules and procedures and may have received different information about the compensation policies.

40

Furthermore, T-Mobile's affidavit evidence shows that, unlike Vega, many class members were told about, and fully understood, how the charge back procedure worked and that it applied to prepaid accounts that were deemed deactivated (including by way of account inactivity) during the post-sale charge back window. This evidence, just as with commonality and predominance, highlights the individual variation in the claims and defenses applicable to each class member and how those claims and defenses frequently will differ from Vega's individual case. This is particularly true on the unjust enrichment claim, where such individualized facts concerning each employee's knowledge of the compensation policies and procedures will delineate the equities in a given case.

In sum, Vega's claims are not typical of those of the certified class, and the district court abused its discretion by applying the law in an unreasonable or incorrect manner in finding otherwise. This shortcoming in the class is another reason why class certification was inappropriate.

D.

The district court also found – albeit in extremely cursory fashion – that the class satisfied Rule 23(b)(3). We next address this issue and conclude, once again, that the district court abused its discretion.

41

Rule 23(b)(3) requires findings both (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four specific (though non-exclusive) considerations pertinent to these findings:

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D)  the likely difficulties in managing a class action.

Id.

Here, the district court engaged in virtually no Rule 23(b)(3) analysis at all. In fact, the court's entire discussion of Rule 23(b) consisted of the following:

Rule 23(b) may be satisfied in a number of ways. In present case [sic], the foregoing reasons accommodate Rule 23(b) because class litigation emerges as the superior method "for the fair and efficient adjudication of [this] controversy." Rule 23(b)(3).

This conclusory statement, which cannot truly be called analysis, is grossly insufficient and easily rises to the level of an abuse of discretion.

First, while the district court's discussion lightly touches on the superiority requirement, it contains no mention whatsoever of predominance, which is perhaps

the central and overriding prerequisite for a Rule 23(b)(3) class. See Jackson, 130 F.3d at 1006 ("Rule 23(b)(3), however, imposes two additional requirements, and increased efficiency is only one of them. Predominance is the other . . . ."). To the extent that the district court may have attempted to engage in a predominance assessment sub silencio in other portions of its order, we have already addressed why its efforts were insufficient in part III.B, supra. This failure to address predominance, along with the substantive absence of predominance with respect to the certified class, is fatal to the class certification order in this case.[18]

Second, the district court did not engage in any meaningful superiority analysis either. All it suggested was that a class action would be "the superior method" on account of "the foregoing reasons." "The foregoing reasons," of course, were nothing more than the district court's reasons – themselves often incomplete or outright unreasonable – for why the class met the various requirements of Rule 23(a). By relying wholly on its Rule 23(a) findings, the district court engaged in no independent Rule 23(b) analysis at all. The court did not address any of the four factors bearing on the efficiency of a class action listed

---

[18] This lack of predominance, of course, effectively ensures that, as a substantive matter, a class action is almost certainly not "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

in Rule 23(b)(3) or, for that matter, any other considerations.[19] See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir.) ("In determining superiority, courts must consider the four factors of Rule 23(b)(3)."), amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001). Allowing this class certification to stand, therefore, would require us to find that satisfaction of Rule 23(a) alone is enough to justify class certification. Such a holding would remove all independent meaning and significance from Rule 23(b)'s requirements; indeed, it would effectively read subsection (b) out of Rule 23. This we cannot do.

In this case, the fourth Rule 23(b)(3) factor – "the likely difficulties in managing a class action" – raises particular concerns. Fed. R. Civ. P. 23(b)(3)(D). Due to the central individualized issues discussed above that preclude findings of commonality, typicality, or predominance, any trial of this case would require the presentation of a substantial amount of evidence specific to each of an unknown number of class members. This reality poses serious challenges to the efficiency and manageability of a class action proceeding.

---

[19] Although the factors listed in Rule 23(b)(3)(A)-(D) are important and generally should inform courts' analysis, we do not mean to go so far as to suggest that consideration of every factor listed in Rule 23(b)(3)(A)-(D) is strictly mandatory in every case. The question of when and to what extent such consideration is required is not squarely and unavoidably presented by this appeal. Here, it is enough to observe that a complete failure to address these factors or any other pertinent consideration when conducting a Rule 23(b)(3) inquiry is an abuse of discretion.

Yet Vega has done nothing to acknowledge these issues or propose a trial plan that would feasibly address them, and the district court does not appear to have given any meaningful consideration to how this case, with its individualized claims and defenses, would be tried.[20] See Robinson v. Tex. Auto. Dealers Ass'n, 387 F.3d 416, 425 (5th Cir. 2004) ("A court must consider 'how a trial on the alleged causes of action would be tried.'") (quoting Castano, 84 F.3d at 752). By putting off these issues until trial, or blinking them entirely, both Vega and the district court ran an unnecessarily high risk of introducing needless and avoidable complexity into an already complex case. This is why Rule 23 demands an early consideration of class certification, including its practical implications for case manageability, see Fed. R. Civ. P. 23(c)(1)(A), and the district court's failure to force a reckoning with these issues prior to the very precipice of trial provides

---

[20] We do not mean to say that submission of a trial plan by the plaintiff is necessarily a prerequisite, as a matter of law, for a finding of superiority in every case. See Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 139-40 (5th Cir. 2005). Nonetheless, a plaintiff seeking class certification bears the burden of establishing each element of Rule 23, Valley Drug, 350 F.3d at 1187, which includes superiority in Rule 23(b)(3) cases, and courts must consider how a case will be tried as part of the superiority assessment, Robinson v. Tex. Auto. Dealers Ass'n, 387 F.3d 416, 425 (5th Cir. 2004). Accordingly, the proposal of a workable trial plan will often go a long way toward demonstrating that manageability concerns do not excessively undermine the superiority of the class action vehicle. Moreover, there is a direct correlation between the importance of a realistic, clear, detailed, and specific trial plan and the magnitude of the manageability problems a putative class action presents. We therefore recommend that district courts make it a usual practice to direct plaintiffs to present feasible trial plans, which should include proposed jury instructions, as early as practicable when seeking class certification.

45

further support to our conclusion that the court abused its discretion in certifying this class.[21]

The district court's omission of an independent and substantial, let alone rigorous, analysis of Rule 23(b)(3), in addition to the facts that Vega has not established predominance and likely has not shown superiority, further demonstrates that certification of this class was an abuse of discretion.[22]

IV.

For the foregoing reasons, we conclude that the district court abused its discretion in certifying the class in this case by misapplying proper legal standards, following improper procedures, and applying the law in an unreasonable and incorrect manner. The district court's errors infected both its procedural approach as well as the conclusions it reached, and we further conclude that the complaint,

---

[21] By delaying the class certification decision until shortly before trial, and also by combining the class certification order with its disposition of T-Mobile's motion for summary judgment, the district court also made it more likely that the discrete issues involved in class certification would become needlessly intertwined with the merits of the case dispositive motion. The record suggests that this is indeed what happened in this case, as the parties' arguments surrounding the class certification issues tend to bleed into a deeper discussion of the merits than is necessary to resolve the Rule 23 question. The district court could have prevented, or at least reduced, this confusion by keeping the class certification determination both conceptually and temporally distinct from its merits ruling on summary judgment.

[22] T-Mobile also argues that the district court erred in finding Vega to be an adequate class representative, pursuant to Rule 23(a)(4), due to evidence suggesting that Vega's alleged failure to disclose various facts in discovery renders him insufficiently credible to represent the class in an adequate and effective manner. In light of the numerous other reasons for vacating the class certification in this case, we decline to address, and express no opinion regarding, this inherently fact-dependent argument.

as pled, cannot sustain class action certification as a matter of law. Therefore, we VACATE the district court's class certification order and REMAND the case with the instruction that Vega's claims proceed individually.

VACATED AND REMANDED.