*730
 
 LEWIS, J.
 

 Appellant, St. Johns Investment Management Company (“St. Johns”), appeals the trial court’s denial of its motion for a temporary injunction that sought enforcement of noncompete provisions in an employment agreement against David Alba-neze, Appellee. In denying the motion, the trial court concluded that St. Johns failed to demonstrate a substantial likelihood of success on the merits because the agreement expired upon the termination of Albaneze’s four-year employment term. St. Johns contends that because the plain meaning of the language in the contract demonstrates that the parties intended the noncompete covenants to survive the expiration of the employment agreement, the provisions are enforceable against Alba-neze. We agree. Accordingly, we reverse and remand with instructions to enter a temporary injunction.
 

 St. Johns is an investment advisory and wealth management firm. In November 2002, St. Johns and Compass Bancshares, Inc. entered into a merger agreement wherein Albaneze, St. Johns’ majority shareholder, sold his ownership interest in the company and entered into a separate employment agreement with St. Johns. The agreement dictated that St. Johns would employ Albaneze as Chief Executive Officer for a four-year term beginning December 1, 2002, but provided no further employment guarantees.
 

 In Section 5(c) of the agreement, the parties prohibited competition in four areas as follows:
 

 Employee ... agrees not to and shall not indirectly or directly
 

 (i) hire, employ, or engage any past or present employee, or employee hired during the Term, of Employer, Compass or their affiliates ...
 

 (ii) compete for or solicit financial advisory or asset management services for or on behalf of any ... financial services entity with a place of business in the Market area ...
 

 (iii) compete for or solicit financial advisory or asset management business from any customer of Employer, Compass, or then.* affiliates ...; or
 

 (iv) use ... any proprietary list or other information concerning customers ... developed by Compass, Employer, or their affiliates.
 

 After defining the four areas of prohibited competition, the agreement provided that the covenants were applicable from the date of the agreement and throughout the “Restriction Period.” The Restriction Period, defined in Section 5(d) of the agreement, dictated the duration in which Albaneze was precluded from competing with St. Johns. The agreement contained four different Restriction Periods, but only Section 5(d)(i) is applicable to the instant case. It is the construction of this subsection that remains central to this dispute. Section 5(d)(i) stated as follows:
 

 [The Restriction Period] shall mean: in the event Employee is employed by Employer throughout the Term, [the period shall be] twenty-four (24) months following the date Employee resigns ... or Employee is terminated by Employer; provided, however, that the provisions of subsection 5(c)(ii) shall terminate at the expiration date of the Term.
 

 After the expiration of the four-year term, Albaneze remained a St. Johns employee for almost two more years, but the relationship was not formalized in a written document. In October 2008, Albaneze resigned and began working for LBA Wealth Management, LLC, another financial advisory and asset management firm.
 

 Upon Albaneze’s resignation, he sought a declaratory judgment regarding his rights and duties under the employment
 
 *731
 
 agreement. After Albaneze’s filing, but before the trial court’s determination, he admitted to soliciting financial advisory or asset management business from former St. Johns customers for his new employer. In response, St. Johns sought enforcement of the noncompete covenants contained in Section 5(c)(i), (iii), and (iv) via a motion for a temporary injunction, among other forms of relief.
 

 Generally, the party seeking a temporary injunction must establish four factors.
 
 See Envtl. Servs., Inc. v. Carter,
 
 9 So.3d 1258, 1261 (Fla. 5th DCA 2009). However, at the hearing on the motion, the parties stipulated to three of the four factors. As a result, the trial court only considered the remaining factor: whether St. Johns established a substantial likelihood of success on the merits. After the hearing, the trial court entered an order holding that, based on the four corners of the agreement, the parties’ failure to include express language providing that the noncompete covenants in Section 5(c) survived the expiration of the four year-term rendered the noncom-pete covenants unenforceable post-term. Accordingly, the trial court denied St. Johns’ motion, concluding that St. Johns failed to establish a substantial likelihood of success on the merits.
 

 The propriety of the trial court’s order denying St. Johns’ motion for a temporary injunction depends on whether it correctly concluded that Sections 5(c) and (d)(i) did not contain survival language warranting commencement of the twenty-four month Restriction Period upon Albaneze’s resignation. Our review is de novo.
 
 Bookall v. Sunbelt Rentals, Inc.,
 
 995 So.2d 1116, 1117 (Fla. 4th DCA 2008) (noting that review of a trial court’s order granting or denying a temporary injunction is hybrid in nature: legal conclusions are reviewed de novo, while factual findings implicate the abuse of discretion standard);
 
 see also Nelson Tree Serv., Inc. v. Gray,
 
 978 So.2d 198, 200 (Fla. 1st DCA 2008) (stating that “in the instant case, the denial [of the injunction] rests on purely legal matters and is, therefore, reviewed de novo”);
 
 Carter,
 
 9 So.3d at 1263 (indicating that in an appellate court’s review of a trial court’s grant or denial of a temporary injunction based on the interpretation of a noncompete covenant, the court may independently evaluate the provisions to determine their meaning).
 

 Before issuing a temporary injunction, a trial court must determine that the petition or pleadings demonstrate a prima facie, clear legal right to the relief requested.
 
 Colonial Bank, N.A. v. Taylor Morrison Servs., Inc.,
 
 10 So.3d 653, 656 (Fla. 5th DCA 2009). To demonstrate a prima facie case for a temporary injunction the petitioner must establish four factors: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) a substantial likelihood of success on the merits; and (4) that a temporary injunction would serve the public interest.
 
 Carter,
 
 9 So.3d at 1261. As the party moving for a temporary injunction, St. Johns had the burden of providing substantial, competent evidence satisfying each of the elements necessary to obtain a temporary injunction.
 
 Zupnik v. All Fla. Paper, Inc.,
 
 997 So.2d 1234, 1238 (Fla. 3d DCA 2008) (citation omitted). Because the parties stipulated to factors one, two, and four in the proceedings below, the third factor is dispositive of the instant case.
 

 In employment agreements, as with all contracts, courts must apply the “most commonly understood meaning” with respect to the subject matter and circumstances of the contract.
 
 Gold Coast Media, Inc. v. Meltzer,
 
 751 So.2d 645, 646 (Fla. 3d DCA 1999). Accordingly, whenever possible, contracts must be construed according to their plain language.
 
 Hand
 
 
 *732
 

 v. Grow Constr., Inc.,
 
 983 So.2d 684, 687 (Fla. 1st DCA 2008);
 
 see also Moore v. State Farm Mut. Auto. Ins. Co.,
 
 916 So.2d 871, 877 (Fla. 2d DCA 2005) (noting that courts -will not interpret a contract in a manner that renders provisions meaningless “when there is a reasonable interpretation that does not do so.”). Further, it is well-settled that “[a] party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract.”
 
 Brooks v. Green,
 
 993 So.2d 58, 61 (Fla. 1st DCA 2008). This principle applies even where the terms of the contract are “harsh” or “out of the ordinary.”
 
 Id.
 
 at 61. (citations omitted). In addition, to give proper meaning to a specific contract provision, a court must consider it in the context of the entire contract.
 
 Hand,
 
 983 So.2d at 687.
 

 When an employment agreement contains a noncompete covenant, the restriction survives the termination of the agreement if the agreement contains express language demonstrating that the parties intended its survival.
 
 Brenner v. Barco Chems. Div., Inc.,
 
 209 So.2d 277, 278 (Fla. 3d DCA 1968) (holding that non-compete provisions survived the expiration of an employment agreement where (1) the contract expressly provided that the provisions would continue to apply if the employee continued working; and (2) the noncompete clause expressly stated it would continue to be in effect after the expiration or termination of employment). Where the parties expressly provide that the employee’s rights and obligations outlast the expiration of the “term,” the contract does not expire and enforcement of the noncompete provisions is warranted.
 
 Id.
 
 at 278;
 
 see also Century 21 Real Estate of S. Fla., Inc. v. Braun & May Realty, Inc.,
 
 706 So.2d 878, 879 (Fla. 3d DCA 1997) (approving
 
 Brenner,
 
 holding that agreement did not lapse where its terms provided for its post-term survival);
 
 cf. Gray v. Prime Mgmt. Group, Inc.,
 
 912 So.2d 711, 713 (Fla. 4th DCA 2005) (where a written employment agreement expires and the employee continues at-will via an oral agreement, a noncompete provision in the original written contract “cannot always be enforced”).
 

 The parties dispute the impact of Albaneze’s continued employment post-term. Albaneze asserts that upon the expiration of the four-year term, the employment agreement was fully performed, the contract expired, and that, as a result, the noncompete covenants no longer applied to him. In contrast, St. Johns argues that the plain meaning of Section 5(d)(i) indicates that the twenty-four month non-competition period did not commence until Al-baneze resigned from St. Johns in October 2008. We agree with St. Johns.
 

 The terms of the employment agreement included rights and obligations that survived Albaneze’s four-year term. In Section 5(d)(i), the parties expressly contemplated the duration of the Restriction Period in the event that Albaneze remained employed by St. Johns for the entire four-year term. Because Section 5(d)(i) is central to our analysis, its language bears repeating:
 

 [The Restriction Period] shall mean: in the event Employee is employed by Employer throughout the Term, [the period shall be] twenty-four (24) months
 
 following the date Employee resigns
 
 ... or Employee is
 
 terminated
 
 by Employer; provided, however, that the provisions of subsection 5(c)(ii)
 
 shall terminate at the expiration date of the Term.
 

 (emphasis added). For the purposes of this analysis, we refer to the language before the semicolon as clause one, and the language after the semicolon as clause two.
 

 Notably, the parties isolated Section 5(c)(ii) in clause two, providing that the
 
 *733
 
 noncompete covenants contained therein expired at the end of the four-year term. As a result, clause one only applied to the noncompete covenants contained in Section 5(c)(i), (iii), and (iv), the covenants St. Johns seeks to enforce here.
 

 Clause one of the agreement plainly provides that, if Albaneze remained employed by St. Johns for the full four-year term, his post-term resignation or termination would trigger commencement of the twenty-four month Restriction Period. In order for Albaneze to “resign” or be “terminated” following his employment “throughout the term,” he must remain employed by St. Johns for more than four years. Thus, by its terms, Section 5(d)(i) contemplated a situation wherein Albaneze remained a St. Johns employee in the absence of a written agreement. Moreover, it would not be possible for Albaneze to “resign” or be “terminated” after working “throughout the Term” if he did not remain employed by St. Johns after the four-year term expired. In sum, accepting the trial court’s interpretation of the agreement would render clause one meaningless. Because working for the entire four-year term constituted a condition precedent to the application of Section 5(d)(i), it necessarily applied to Albaneze’s post-term employment relationship, as his resignation or termination could occur at any time following satisfaction of the condition precedent.
 

 In our view, it is clear that the parties intended the noncompete covenants contained in Section 5(e)(i), (iii), and (iv) to apply to Albaneze for twenty-four months after his resignation. As noted above, the parties provided that, depending on the noncompete covenant implicated, one of two Restriction Periods would apply. Had they intended to utilize the same Period, the parties would not have provided in clause one that the Period would commence “twenty-four months following the date Employee resigns ... or Employee is terminated” and instructed in clause two that the Period “shall terminate at the expiration date of the Term.” This language reflects that, had the parties intended the application of all noncompete covenants — rather than one — to terminate at the end of the four-year term, the parties were aware of the language that would accomplish that result. Rather, the parties provided that upon Albaneze’s post-term resignation or termination, the non-compete covenants contained in Section 5(c)(i), (iii), and (iv) remained intact for the following twenty-four months. The parties used different language because they intended a different result. Therefore, because the Restriction Period commenced upon Albaneze’s October 2008 resignation, the noncompete covenants in Section 5(c)(i), (iii), and (iv) survive the four-year term of the employment agreement and apply to Albaneze until October 2010.
 

 Because the trial court’s construction of Section 5(d)(i) conflicts with the plain meaning of the provision, the trial court reversibly erred in holding that the non-compete covenants did not apply to Alba-neze, and that, as a result, St. Johns failed to demonstrate a substantial likelihood of success on the merits. Accordingly, we reverse the order of the trial court and remand for entry of a temporary injunction.
 

 REVERSED and REMANDED with instructions.
 

 WEBSTER and THOMAS, JJ„ concur.