VAN NORTWICK,
dissenting.
I read the contract provisions applicable here to grant to National Safety Commission, Inc. (NSC), a unilateral option to renew the contract awarded to it by the Florida Department of Highway Safety & Motor Vehicles (Contract) contingent upon NSC’s satisfactory service under the Contract. The record here is undisputed that the Department acknowledges that NSC satisfactorily performed all of its obligations under the Contract and that the Department’s decision to dispute the renewal was based on grounds other than NSC’s performance. Further, neither the applicable statute, section 283.58, Florida Statutes (2004), nor the case authority relied upon by the majority opinion, Department of Corrections v. C & W Food Service, Inc., 765 So.2d 728 (Fla. 1st DCA 2000), provides a basis for reversal. Accordingly, I respectfully dissent.

Background

The gravamen of this appeal concerns the interpretation of the renewal provision of the Contract that was awarded to NSC by the Department on May 4, 2005, pursuant to which NSC prints and distributes the Florida Official Driver’s Handbook at its own expense and at no cost to the State of Florida. In accordance with section 283.58, Florida Statutes,[6] the Contract gives NSC the right to select, sell and place Department-approved advertising in the Handbook. In the Contract, the parties agreed that NSC would print and provide a specified quantity of Handbooks at NSC’s expense for a “5-year contract period with an option to renew.” Prior to expiration of the initial term of the Contract, NSC notified the Department that it was exercising its renewal option and that NSC would continue to print and distribute the Handbook at no cost to the State of Florida for an additional five years. The Department refused to recognize NSC’s renewal of the Contract.
Following a non-jury trial, the trial court entered a final judgment finding that NSC possessed the unilateral right to renew the Contract and that the Department must specifically perform the Contract. In its final judgment, the trial court explained its ruling, in part, as follows:
The parties, through the Invitation to Negotiate process, negotiated and established their respective rights and duties, and expressed them in an undisputedly valid and binding written document, the Contract. It is evident from the face of the Contract that the parties knew how to make a provision in the Contract contingent upon mutual agreement of the parties. The parties chose, however, not to use the words “mutual agreement” or “mutual” in the renewal provisions of the Contract. They also chose not to mention the Department in the renewal provisions of the Contract. Instead, the Contract exclusively references the Plaintiff and states that it is Plaintiffs option to renew. Accordingly, when the contract is construed as a whole and when its provisions are read together, the Plaintiff clearly possesses an unambiguous, unilateral renewal right under the Contract.
Despite its argument that the renewal of the Contract requires mutual consent, the Department has not put forward any *303 reasonable interpretation of the renewal provision of the Contract that would support a renewal contingent upon mutual agreement. Instead, the Department invites the Court to essentially insert the phrase “by mutual assent” into the renewal provisions of the Contract. The Court, however, may not insert terms into a private contract that the parties did not choose, no matter how reasonable such terms might appear. Having failed to include a “mutual assent” requirement in any renewal clause in the Contract or any reference whatsoever to the Department in connection with any renewal option under the Contract, it would be improper for the Court to now add this term five years after the fact simply for the benefit of the Department.
(Citations and footnote omitted). The Department has appealed that final judgment.

The Option to Renew the Contract

The Department’s Invitation to Negotiate (ITN), which solicited proposals from vendors to print and distribute the Handbook at no cost to the State, provides:
8.2 TERM OF CONTRACT: The Contract shall be in effect for 5 years, with one (1) 5 year renewal option contingent upon satisfactory service, unless terminated earlier by the Department under the terms provided herein, subject to an annual appropriation by the State Legislature.
(Emphasis added, bold in original). NSC’s Best and Final Offer dated April 1, 2005, which is expressly incorporated into the Contract, similarly provides:
NSC will print and provide all handbooks for the 5-year contract period with an option to renew.
(Emphasis added).
The first page of the Contract between the parties provides:
CONTRACT PERIOD: This contract shall begin on the 1st day of July, 2005 and shall terminate on the 30th day of June, 2010. There is one renewal option for a five (5) year period.
(Emphasis added, bold in original). This same page of the Contract further states:
The Contractor agrees to provide the following services:
1. The Contractor will print and provide all handbooks for the 5-year contract period with an option to renew ....
(Emphasis added, bold in original).
While all three of these documents collectively set out the terms for renewal of the Contract, the Contract expressly establishes a hierarchy of terms, with the terms of the Best and Final Offer controlling:
This Contract is governed by the terms and conditions set forth in ITN No. 002-OS with exception of the terms submitted by the Contractor’s Best and Final Offer dated April 1, 2005.
The controlling provision in the Best and Final Offer is clear and unequivocal: “NSC will print and provide all handbooks for the 5-year contract period with an option to renew.” As the trial court noted in the final judgment, the Department is not mentioned in connection with the right to renew the Contract. Further, none of these provisions includes a clause requiring any renewal to be by “mutual agreement” of the parties. Both the Contract and the Best and Final Offer contain substantively identical renewal language and, in my view, make clear that renewal is at NSC’s option. The majority opinion, in effect, rewrites the Contract to add the phrase “by mutual assent” in the renewal provision, so that the renewal provision of *304 the Best and Final Offer would read “NSC will print and provide all handbooks for the 5-year contract period with an option to renew [by mutual assent].”
The record reflects that the Department stipulated prior to trial that the renewal provisions of the Contract are unambiguous. “[I]t is well-settled that ‘[a] party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract.’ This principle applies even where the terms of the contract are ‘harsh’ or ‘out of the ordinary.’ ” St. Johns Inv. Mgmt. Co. v. Albaneze, 22 So.3d 728, 732 (Fla. 1st DCA 2009) (quoting Brooks v. Green, 993 So.2d 58, 61 (Fla. 1st DCA 2008)); see also Jenkins v. Eckerd Corp., 913 So.2d 43, 52 (Fla. 1st DCA 2005) (“[I]t is the obligation and right of the parties to negotiate and draft the provisions of the lease, not a court.”).
As the trial court recognized in its final judgment, it is apparent from the Contract itself that the Department was aware of the meaning and use of a “mutual agreement” clause. The words “mutual agreement” or “mutual consent” appear in other locations in the Contract, but not with respect to renewal. For example, the Contract provides that “with the mutual agreement of both parties” it may be terminated without penalty prior to the end of the Contract period. Had the parties intended to make the renewal of the Contract subject to “mutual agreement” they would have included that phrase in the Contract. See St. Johns Inv. Mgmt. Co., 22 So.3d at 733 (refusing to read into provision of contract language that was included elsewhere in contract stating that “[t]he parties used different language because they intended a different result.”).
More importantly, the trial court’s ruling is consistent with the law of option contracts. As stated in 1 Williston on Contracts § 5:16 (4th ed.):
The traditional view regards an option as a unilateral contract which binds the optionee to do nothing, but grants him or her the right to accept or reject the offer in accordance with its terms within the time and in the manner specified in the option. Thus, the optionee has the open discretion to take or to leave the proposal. An option to purchase or to sell is not itself the contract to purchase or to sell, and this is equally true of all transactions in which an option is sought or given. Its outstanding factor is that the optionee is not bound until it acts on the option one way or another. At the same time, during the period when the optionee is free to accept or reject, the optionor cannot act in derogation of the terms of the option. During the option period the irrevocable offer may only be modified, released or rescinded by agreement of the parties. It cannot be unilaterally withdrawn. Thus, the op-tionee has discretion in regard to the action that will be taken under the option, but the optionor does not.
In Polk v. BHRGU Avon Properties, LLC, 946 So.2d 1120, 1122 (Fla. 2d DCA 2006), the court adopted the definition in Restatement (Second) of Contracts § 25 (1981) as follows: “An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor’s power to revoke an offer.” While it is true that an option contract may be bilateral, 3 Corbin on Contracts § 11.2 (Rev. Ed.), that is usually because each party "has made a binding promise. Id. Here, the majority maintains the option was bilateral because it required the joint agreement of both parties to be effective. As the trial court found, however, the words “mutual agreement” or “mutual” are not contained in the renewal provisions of the contract.
*305 On the face of the unambiguous contractual provisions at issue, the trial court properly concluded that it was without authority to add any additional terms to the Contract and refused to rewrite the Contract by adding a “mutual assent” requirement.

NSC’s Satisfactory Service

Under the Contract, NSC’s right to renew is “contingent upon satisfactory service.” The trial court correctly construed this phrase to mean satisfactory service by NSC in the performance of its contractual obligations. At trial, representatives of the Department testified that NSC had performed all of its obligations under the Contract and that the Department never conducted any evaluations of NSC’s performance under the Contract. Further, extensive evidence was presented at trial establishing that the Department’s decision not to renew the Contract was wholly unrelated to NSC’s service under the Contract, but instead was due to the Department’s “business decision” not to continue the Contract to “hit the restart button” and use a “different model.”[7] It is apparent from the record that the officials in the Department believed they could decide not to renew the Contract for reasons wholly unrelated to NSC’s service under the Contract. For example, the executive director testified: “I didn’t terminate the contract due to a failure in the performance of the contract. I just simply didn’t renew it.” Thus, the trial court’s finding that a “satisfactory service” or “satisfactory performance” requirement would not alter the outcome, because the Department’s decision to dispute the renewal was based on grounds other than NSC’s performance under the Contract, was supported by the undisputed evidence in the record.

C & W Food Service is Not Controlling

The majority opinion mistakenly relies upon this court’s decision in Department of Corrections v. C & W Food Service, Inc. as requiring mutual agreement for the exercise of the renewal option here. Because C & W Food Service is construing a very different renewal provision than is before us and is addressing a different issue, C & W Food Service does not control the case under review. The contract at issue in C & W Food Service expressly provided that any renewal of the contract was to be based upon mutual agreement. C & W Food Service, 765 So.2d at 729.[8] C & W Food Service sued the Department of Corrections when the Department did not renew the contract, arguing that the Department failed to negotiate in good faith for renewal. Id. In light of the express “mutual agreement” language in that contract, this court held that “the contract was not renewable as a matter of right” and reversed the trial court’s award of damages to C & W. Id. at 731.
*306 C & W Food Service is distinguishable from the case under review both because the contract there expressly stated that renewal was only to be by “mutual agreement” and because the issue in C & W Food Service was materially different from the issue before the Court here. At issue in C & W was whether section 287.058(1)(f), Florida Statutes, requires an agency to negotiate in good faith for renewal under an agreement that expressly states it may only be renewed by “mutual agreement.” Id. at 730-31.[9] On the other hand, the issue here is whether under section 283.58 a state agency may choose to enter into a binding agreement that gives a vendor a unilateral right to renew the contract where the vendor is incurring all costs associated with the contract and receives no payment of government funds.
“Contracts are to be construed in accordance with the plain meaning of the words contained therein, and it is never the role of the trial court to rewrite a contract to make it more reasonable for one of the parties.” Ferreira v. Home Depot/Sedgwick, CMS, 12 So.3d 866, 868 (Fla. 1st DCA 2009); see also St. Johns Inv. Mgmt. Co., 22 So.3d at 731 (“[W]henever possible, contracts must be construed according to their plain language.”). In addition, a contract must be construed as a whole, giving effect to every portion of the contract. Hughes v. Prof'l Ins. Corp., 140 So.2d 340, 345 (Fla. 1st DCA 1962); see also Publix Super Mkts., Inc. v. Wilder Corp. of Del., 876 So.2d 652, 654 (Fla. 2d DCA 2004) (“Courts must ‘construe contracts in such a way as to give reasonable meaning to all provisions,’ rather than leaving part of the contract useless.” (quoting Hardwick Props., Inc. v. Newbern, 711 So.2d 35, 40 (Fla. 1st DCA 1998))). In my view, the trial court correctly construed the Contract as whole, including those documents incorporated by reference into the Contract, and, in accordance with the plain meaning of the words contained in the Contract, correctly concluded that NSC has a unilateral right to renew the Contract for another five-year term.
I would affirm the final judgment on appeal.

. Chapter 283.58, Florida Statutes (2004), authorizes the Department to contract for private publication of public information materials where the cost is borne by the vendor in return for the right of the vendor to advertise products or services in the publication.

. The majority opinion alludes to "a cloud of suspicion about the propriety of the contract,” majority opinion, page 4. Yet, the trial court found that "the Department’s decision not to renew the Contract was a 'business decision' made by its Executive Director based upon certain structural and policy reasons as well as the Department's desire to start over with a ‘clean slate' in light of unproven allegations by [NSC’s] competitors.” (Emphasis added).

. The renewal clause in C & W Food Service, 765 So.2d at 729, provides:
This Contract may be renewed for two additional one-year periods after the initial Contract period, upon the same terms and conditions contained herein. Renewal will be based on mutual agreement, conditioned at a minimum, on satisfactory performance evaluations by the Department and subject to the availability of funds and shall be exercised no later than thirty (30) days pri- or to Contract expiration.
(Emphasis added).

. Section 287.058 does not apply here because by its own terms it applies only to "the procurement of contractual services in excess of the threshold amount in section 287.017 for CATEGORY TWO.” § 287.058(1), Fla. Stat. (2004). In 2005, the CATEGORY TWO amount was $25,000. § 287.017(l)(b), Fla. Stat. (2004). The provisions of chapter 287 make clear that a "procurement of contractual services” under section 287.058 must involve the expenditure of government funds. For example, section 287.057(5), states that competitive procurement is required "[w]hen the purchase price of commodities or contractual services exceeds the threshold amount provided in s.287.017 for CATEGORY TWO.” § 287.057(5), Fla. Stat. (2004). Similarly, section 287.0582, Florida Statutes, prohibits an agency from entering into a contract "for the purchase of services or tangible personal property” absent language expressly making the contract contingent upon a legislative appropriation. § 287.0582, Fla. Stat. (2004). As the trial court correctly found, there is no "purchase” or "purchase price” under the Contract because all costs are borne by NSC and the Contract does not include any appropriation of state funds.