[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16993
_____

D.C. Docket No. 6:13-cv-00921-CEM-GJK

HEATHER VENERUS,
individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

versus

AVIS BUDGET CAR RENTAL, LLC,
BUDGET RENT-A-CAR SYSTEM, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 25, 2018)

Before BLACK and HULL, Circuit Judges, and RESTANI,* Judge.

PER CURIAM:

---

* Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

This case arises out of Avis Budget Car Rental, LLC's and Budget Rent-A-Car-System, Inc.'s (collectively, Avis/Budget) business practice of selling Supplemental Liability Insurance or Additional Liability Insurance (collectively, SLI/ALI) to rental customers from countries outside the United States.  Heather Venerus alleges, on behalf of herself and all others similarly situated, that Avis/Budget promised SLI/ALI coverage as a policy provided through Ace American Insurance Company (ACE), an insurer authorized to provide such coverage in Florida.  Venerus alleges that despite Avis/Budget's contractual obligation to do so, neither an ACE policy nor any other SLI/ALI insurance policy was ever purchased for, or provided to, the foreign renters who purchased the optional coverage.  Instead, Avis/Budget, which is not an insurance company, purported to insure the foreign renters itself with contractual liability coverage that had no policy or written coverage terms.  Lacking the authority to transact such insurance in Florida, Avis/Budget allegedly left the renters without the legally valid insurance coverage they were promised and had purchased.

In her Amended Complaint, Venerus alleged Avis/Budget promised to purchase SLI/ALI policies from ACE on her behalf, and on behalf of others similarly situated, but did not fulfill that promise, both breaching contracts and violating the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat.

2

§ 501.201 *et seq.* (FDUTPA).[1]  The district court denied class certification on the breach of contract and FDUTPA counts alleging Avis/Budget promised to provide SLI/ALI and failed to do so, and Venerus appeals that denial.  We reverse the district court's denial of class certification, and we remand for further proceedings.

## I.  BACKGROUND

Avis/Budget enters into car rental supply agreements with third-party brokers.  Under these agreements, the third-party brokers sell Avis/Budget brand car rentals at agreed-upon rates to customers who travel to the United States from abroad.  When a customer rents an Avis/Budget vehicle from a third-party broker, the customer pays the third-party broker.  The customers receive a prepaid rental voucher (Voucher) from the third-party broker, as well as a rental invoice.  The brokers independently prepare and issue the Vouchers, which reference a rate code and describe the options purchased with that rate code.

---

[1] In entering its order on class certification, the district court explained that Venerus pleaded two separate theories in her Amended Complaint.  The first theory is that Avis/Budget promised to provide SLI/ALI and failed to do so.  This theory includes her breach of contract count (Count I), unjust enrichment count (Count II), and a portion of her FDUTPA count (Count IV).  The second theory is that the contractual liability coverage Avis/Budget provided in place of SLI/ALI violates Florida insurance laws.  This theory includes her Florida Insurance Code count (Count III), Civil Remedies for Criminal Practices Act count (Count V), and a portion of her FDUTPA count (Count IV).  The body of this opinion addresses the first theory only as to Counts I and IV, and to the extent this opinion refers to FDUTPA, it refers solely to the portion of Venerus's FDUTPA claim covered by the first theory.

As to the claims brought under the second theory, the district court first granted class certification, then decertified the class and denied Venerus's individual claim.  To the extent Venerus appeals the district court's decision as to Count III, the portion of Count IV brought under the second theory, and Count V, we affirm the district court.

Rate codes are the various set rental rates Avis/Budget sells to overseas brokers that include the vehicle rental, as well as optional coverages, inclusions, taxes and fees.  For example, a rate code could include the vehicle time and mileage, taxes, loss damage waiver insurance, SLI/ALI insurance, and airport fees.  A different rate code could include all the above options plus an infant car seat.  Once the customer selects the desired options, the rate code reflecting those options is reflected on the Voucher, as well as a list of those options.

Once in the United States, the foreign customers redeem their Vouchers at an Avis/Budget rental counter.  The customers tender their Vouchers upon arrival because the applicable rate code, as well as the options, inclusions, and coverages, are determined by the Vouchers' terms.  The Avis/Budget rental agent inputs the rate code and all the coverages, protections, and optional products into Avis/Budget's computer system.  The information input is reflected on the Avis/Budget Rental Receipt.  Avis/Budget does not maintain the Vouchers once the information is in its system.  The customer ultimately receives the Avis/Budget Rental Receipt and a Rental Jacket.  The Rental Jacket is specific to Florida and further explains certain items on the Rental Receipt.

The Rental Jacket contains information regarding SLI:

Supplemental Liability Insurance (SLI) & Exclusions:  You'll pay for SLI if available and, if you accept it.  In that case, the coverage provided by us according to paragraph 17 above will be primary and the combined limits of liability protection will be $1,000,000 or

4

$2,000,000 depending on the place of rental for bodily injury, death, or property damage for each accident, but not for more than the contracted $1,000,000 or $2,000,000 limit for each accident instead of the basic limits stated in paragraph 17 above. This additional coverage will be provided to an authorized driver, as defined in paragraph 16 above, under a separate policy of excess liability insurance more fully described in the available brochure and is subject to all of the conditions and limitations described in paragraph 17 above, except that notwithstanding anything contained in this agreement, the terms of the policy will at all times control. SLI does not apply to liability for bodily injury or property damage arising out of any "prohibited use of the car" as described in paragraph 15 of this rental agreement. Other exclusions to SLI are listed in the SLI policy. You understand that you will be charged the rate per day for a full day even if you don't have the car for the entire day.

The Rental Jacket also has an informational section regarding SLI:

What is Supplemental Liability Insurance (SLI)?

Budget has Supplemental Liability Insurance (SLI) available at all Florida locations. SLI is a special optional service offered by Budget when you rent a car from Budget. It's an "Excess Automobile Liability Insurance Policy" that provides Supplemental Liability Insurance, within specified limits, above the limits provided in this Rental Agreement. SLI insures you, and authorized operators as defined in this Rental Agreement against claims made by third parties against you, the customer, for bodily injury/death and property damage caused by the use or operation of a[] Budget rental vehicle as permitted in this Rental Agreement. SLI is a separate insurance policy issued to Budget by ACE American Insurance Company. If you elect to accept SLI for a[] Supplemental daily charge as shown on this Rental Agreement. The purchase of SLI is not required in order to rent a car from Budget.

The Rental Jacket states the information provided is only a summary of SLI, and the specific terms, conditions, and exclusions are contained in the Rental Agreement and the SLI policy issued by ACE.

5

In September 2010, Venerus, a resident of Scotland,[2] reserved a vehicle online from Budget through USrentacar.co.UK (USrentacar), an affiliate of Affordable Car Hire (ACH).  ACH, a British company, provides its customers with rates for rental vehicles and then filters those customers to Avis/Budget, which supplies the vehicles.  Venerus rented a vehicle in preparation for a vacation to Florida, and she was scheduled to pick up the vehicle upon her arrival at the Sanford Airport.  As part of her online rental, Venerus received a rental invoice and a Voucher, both issued by USrentacar.  The Voucher contains a notation stating "RENTAL INCLUDES:  LDW, ALI (Including SLI up to $1 million)."  When Venerus arrived at the Sanford Airport, she presented her Voucher at Budget's rental counter and received both a Rental Receipt and the standard Florida Rental Jacket.  The Rental Receipt contains a line that reads, "SLI .00/Day Accepted."

The rate code Venerus purchased included SLI/ALI.  Venerus discovered Avis/Budget was not actually purchasing SLI/ALI insurance from ACE after she was involved in a motor vehicle accident while in Florida and submitted claims to Avis/Budget requesting coverage under the SLI/ALI policy.  Avis/Budget does not dispute that it did not obtain SLI/ALI insurance policies from ACE.  Avis/Budget contends it provided self-funded contractual liability coverage in place of SLI/ALI

---

[2] While the Amended Complaint states Venerus is a resident of England, Venerus states she is a resident of Scotland in her deposition.

coverage.  The notation "SLI .00/Accepted" was purportedly Avis/Budget's way of indicating on the rental agreement "that someone is coming [from] overseas with a tour voucher that is being—in which is being extended $1 million of contractual liability."

After learning that Avis/Budget did not purchase the promised SLI/ALI coverage from ACE, Venerus filed a complaint against Avis/Budget for, *inter alia*, breach of contract and violations of FDUTPA.  She moved for class certification on her breach of contract and FDUTPA counts.  The district court denied certification, determining there was no single form rental contract.  The district court found each customer's contract would include (1) the Voucher he or she received from the overseas broker, (2) the Rental Receipt received from Avis/Budget, and (3) the Rental Jacket received from Avis/Budget.  The district court reasoned that one key part of the alleged contract, the Voucher, is issued by each broker and differs depending on the broker, and that some brokers may not even issue Vouchers.  The district court found Venerus's "voucher along with what she received when she picked up her rental car must all be considered as a whole to determine precisely what was promised and what was accepted."  The district court determined Venerus could not show the contracts of class members who did not purchase rentals from ACH were the same as her contract and, consequently, denied class certification.

7

## II.  DISCUSSION

Venerus contends the district court abused its discretion by determining that each renter's individual Voucher was essential to decide whether Avis/Budget breached each customer's rental contract and violated FDUTPA.  Venerus asserts the material terms at issue are contained on the Rental Receipt and Rental Jacket each renter received at the Avis/Budget service desk once in Florida.

In declining to certify the class on Venerus's breach of contract claim, the district court reasoned as follows:

> Plaintiff alleges that she was promised ALI/SLI, which Defendants did not provide.  However, Plaintiff does not have a single form rental contract upon which she relies.  Instead, Plaintiff points to various documents and representations, including the voucher she obtained from ACH, and the receipt and informational jacket she received at the service desk when she redeemed the voucher.  Plaintiff asserts that these documents, when read together, promise the provision of ALI/SLI rather than contractual liability coverage.  However, one key portion of this alleged contract—the rental voucher—is issued by each broker and differs depending on the broker. . . . Indeed, some of the brokers may not even issue vouchers. . . . Plaintiff argues that this is irrelevant because she does not have to rely on the voucher; she maintains that the promise to provide ALI/SLI is evidenced by the receipt and jacket and that the relevant provisions of the receipt and jacket are uniform.
>
> While clever, Plaintiff's argument fails to consider a fundamental rule under Florida contract law—"to give proper meaning to a specific contract provision, a court must consider it in the context of the entire contract." *St. Johns Inv. Mgmt. Co. v. Albaneze*, 22 So. 3d 728, 732 (Fla. 5th DCA 2009).  Plaintiff's voucher along with what she received when she picked up her rental car must all be considered as a whole to determine precisely what was promised and what was accepted.  Plaintiff cannot simply disregard portions of the agreement.

8

Accordingly, Plaintiff has failed to show that the contracts for class members who did not purchase rentals from ACH were the same as her contract. Plaintiff has not shown that the alleged breach and resulting injuries would have been uniform; therefore, Plaintiff failed to establish that she has standing to pursue a claim for breach of the individual rental contracts on behalf of class members who did not purchase rentals from ACH.

(DE 149 at 9-10).

Similarly, in declining to certify the FDUTPA claim, the district court

reasoned:

To the extent Plaintiff's FDUTPA claim is based on Defendants allegedly misrepresenting that they would provide ALI/SLI, Plaintiff has not established that she has standing to bring these claims either. "[D]eception [under FDUTPA] occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quotation omitted). Necessarily, then, the decision-maker would have to look at the entirety of the alleged misrepresentation to determine whether it was deceptive. In order to determine that Defendants made a misrepresentation by promising to provide ALI/SLI, the decision-maker would have to examine not only Defendant's practices and representations made at the time the individuals acquired their vehicles, but also what representations were made at the time the rental was purchased. Therefore, for the same reasons that Plaintiff has not established that she has standing to bring breach of contract claims on behalf of class members who did not purchase their rentals from ACH, Plaintiff has not done so with regard to the FDUTPA claims based on the same alleged misrepresentations.

(DE 149 at 11).

In declining to certify a class on the breach of contract and FDUTPA claims

the district court, couching its conclusion in Article III standing language, found

9

that each renter's individual Voucher would be necessary to decide the breach of contract and FDUTPA claims.  We address the district court's use of Article III standing language before turning to its conclusion that the Vouchers make these claims ill-suited for class treatment.

A.  *Standing*

Standing is a question of law reviewed *de novo*.  *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 n.9 (11th Cir. 2001).  "For a district court to certify a class action, the named plaintiffs must have standing . . . ."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quotations omitted).  Standing consists of three elements.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."  *Id.* at 1547 n.6 (quotations and alteration omitted).

To the extent the district court relied on Article III standing to decline to certify the class, this was error.  Both parties agree the district court conflated Article III standing with the Federal Rule of Civil Procedure 23 requirements for

10

class certification.  The district court had to have found Venerus had standing to bring her breach of contract and FDUTPA claims because, absent standing, a court cannot reach the merits.  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).  By allowing her individual claims to go forward, the district court implicitly reached the correct conclusion that Venerus alleged an injury, fairly traceable to Avis/Budget, that was likely to be redressed by a favorable judicial decision.  *See Spokeo*, 136 S. Ct. at 1547.

B.  *Vouchers*

"For a district court to certify a class action . . . the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b).  *Vega*, 564 F.3d at 1265.  Rule 23(a) states:

> (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis removed).  These prerequisites are normally called "numerosity, commonality, typicality, and adequacy of representation."  *Vega*, 564 F.3d at 1265 (quotations omitted).  If those four prerequisites are satisfied, the

11

district court must consider the relevant 23(b) requirements. In this case, Venerus sought certification pursuant to Rule 23(b)(3), which permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

We review a district court's class certification decision for abuse of discretion. *Vega*, 564 F.3d at 1264. The "'district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner.'" *Id.* (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004)). "Recognizing the awesome power of a district court in controlling the availability of the class action mechanism, we require that decisions to certify a class rest on a rigorous analysis of the requirements of Rule 23." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (quotations and internal citation omitted).

The district court determined the individual Vouchers make this case unsuitable for class certification. Because the district court couched its discussion in standing language and did not conduct a standard Rule 23 analysis, it is difficult

12

to discern exactly which Rule 23 requirement the district court found Venerus's claim lacked.  Avis/Budget contends the district court was conducting a commonality analysis; however, the Vouchers may alternatively be relevant to Rule 23(b)(3) predominance.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("[C]ommonality [is] the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" (quoting Fed. R. Civ. P. 23(a)(2))); *Sacred Heart Health Sys.*, 601 F.3d at 1170 ("Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." (quotations, emphasis, and alteration omitted)).  Because we are unsure of the district court's analysis, we will review the overarching conclusion that the Vouchers are necessary to a decision to certify a class on the breach of contract and FDUTPA claims with regard to questions of commonality and predominance.

### 1. Commonality

The district court rejected Venerus's attempt to certify a class because the putative class did not have a single form rental contract.  Instead, each customer's contract would include (1) the Voucher he or she received from the broker (assuming the broker issued a Voucher), and (2) the Rental Receipt and Rental

13

Jacket he or she received at the Avis/Budget service desk when the Voucher was redeemed.

But, as the district court explained, Venerus's breach of contract and FDUTPA claims "are based on allegations that Defendants promised to provide ALI/SLI and failed to do so." Thus, to resolve each putative class member's case, the court must determine whether Avis/Budget breached its contractual duty and violated FDUTPA by failing to purchase SLI/ALI from ACE for the foreign renter. This is the common question for commonality purposes. This question can be decided by looking only to the Rental Receipt and Rental Jacket a renter receives once in Florida. We conclude, based on the evidence presented, that the district court clearly erred insofar as it determined the Vouchers were necessary to decide that common question.

### 2. Predominance

The district court may be correct that the Vouchers would be considered part of the contract under Florida law. That is not the end of the analysis, however. "Claims for breach of contract are peculiarly driven by the terms of the parties' agreement, and common questions rarely will predominate if the relevant terms vary in substance among the contracts." *Sacred Heart Health Sys.*, 601 F.3d at 1171. While form contracts are ideal for class treatment, our threshold inquiry is whether all contracts are "materially similar." *Id.* (citing *Allapattah Servs. v.*

14

*Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)).  It is true the Vouchers reflect the point in time when the renters "accepted" the SLI or ALI, and the Vouchers provide different rate codes, coverages, and additions depending on both the tour company and the options the customer selected.  However, the process that occurs once the renter comes to Florida supports the conclusion that the contracts are "materially similar," and the Vouchers are not necessary to decide whether Avis/Budget promised SLI/ALI and failed to provide it.

As explained earlier, foreign customers redeem their Vouchers at an Avis/Budget rental counter.  The customers tender their Vouchers upon arrival because the applicable rate code, as well as the options, inclusions, and coverages, are determined by the Vouchers' terms.  The Avis/Budget rental agent then inputs the rate code and all the coverages, protections, and optional products into Avis/Budget's computer system.[3]  After input, the information is reflected on the Avis/Budget Rental Receipt, and Avis/Budget does not maintain the Vouchers once the information is in its system.  The customer receives the Avis/Budget Rental Receipt and a Rental Jacket.  That Avis/Budget inputs the Vouchers' relevant information into its own system and then discards the Vouchers makes analysis of each customer's individual Voucher unnecessary to decide whether Avis/Budget promised to provide SLI/ALI and failed to do so.

---

[3]  It is undisputed the terms of the individual Vouchers are incorporated into each individual rental agreement.

15

The putative class members, foreign renters who were promised SLI/ALI and did not receive it, are readily identified by the notation "SLI .00/Day Accepted" or "ALI .00/Day Accepted" on their Rental Receipt. If this notation appears on a foreign renter's Rental Receipt, the renter was promised SLI/ALI purchased from ACE Insurance Company and did not receive the promised coverage. The Rental Receipt and Rental Jacket the renter received once in Florida contain the material information necessary to determine the question at issue. The Voucher does not materially alter Avis/Budget's insurance obligations as set forth in the Rental Receipt and Rental Jacket; it merely reflects that a renter's reserved rate includes SLI/ALI, which is also readily ascertainable from the Avis/Budget Rental Receipt. The material terms at issue are the same—the renters were promised something they did not receive, which is apparent from the uniform part of the contract. The district court abused its discretion to the extent it determined Vouchers were necessary to a finding of predominance.

The district court also abused its discretion in finding that Venerus did not show the alleged breach and resulting injuries were uniform. The discrete Vouchers do not defeat commonality or predominance in certifying a class on the breach of contract and FDUTPA counts, as each Voucher is input into the standard contract Avis/Budget uses once the renter arrives in Florida. The alleged breach is always the same—the renter was promised SLI/ALI insurance from ACE that was

16

never purchased.  The injury is also the same—the renter paid for SLI/ALI

insurance as part of his or her rate code that was never received. We conclude,

based on the evidence before the district court, the district court abused its

discretion by determining the Vouchers are necessary to deciding each class

member's breach of contract and FDUTPA claims.

### III.  CONCLUSION

The district court erred in determining Venerus lacked standing to bring the

breach of contract and FDUTPA claims, and the district court abused its discretion

in determining the Vouchers materially altered the terms of contracts as to SLI/ALI

insurance.  Therefore, we reverse and remand to the district court for further

proceedings as to the breach of contract claim in Count I and the portion of the

FDUTPA claim in Count IV based on the failure to provide SLI/ALI.  We affirm

as to Count III, the portion of Count IV based on the allegation the contractual

liability coverage violates Florida's insurance laws, and Count V.[4]

**AFFIRMED in part, REVERSED and REMANDED in part.**

---

[4]  We are not deciding whether a class should be certified, but we remand to give the district court the opportunity to conduct a full Rule 23 analysis.

17